NOT DESIGNATED FOR PUBLICATION

No. 128,048

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GLENN L. KEELER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRYSTAL KRIER, judge. Submitted without oral argument. Opinion filed July 24, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

PER CURIAM: A jury convicted Glenn L. Keeler of two counts of aggravated assault with a deadly weapon, based on evidence that he pointed an unloaded and inoperable crossbow at his neighbors. Keeler's defense was that he only used the scope to observe people from inside his apartment. He challenges the sufficiency of the evidence. We find the evidence was sufficient to convict him of both charges.

Keeler also asserts that the district court erred when it failed to give a lesser included offense instruction for simple assault and further erred in instructing the jury

that his crimes required a "knowing" mental state, rather than an "intentional" mental state. He did not raise the issues at trial regarding either instruction. After a thorough review, we find that Keeler has failed to meet his burden to show that it was clearly erroneous not to give a simple assault instruction. In addition, we find that he has failed to meet his burden to establish that it was clearly erroneous to instruct the jury on a knowing instead of an intentional mental state. Accordingly, we affirm his convictions.

Finally, Keeler challenges the district court's order that he register as a violent offender because he committed a person felony using a deadly weapon. Contrary to his arguments on appeal, we find that the district court made a proper deadly weapon finding on the journal entry in this case, and there was sufficient evidence to support that finding. We affirm the district court's order that Keeler register as a violent offender.

## FACTUAL AND PROCEDURAL HISTORY

On a morning in November 2022, Jose Robles was leaving his apartment with his girlfriend Kadyn Kingsland and their infant son. As they progressed down the stairs, Robles noticed in his peripheral vision that their downstairs neighbor, Keeler, was standing in his doorway holding something. Robles assumed Keeler was watching them with binoculars because he was known to do that. After getting into their car, the couple noticed Keeler was holding a crossbow and looking at them through an attached scope. Although they could not see if the crossbow was loaded, both Robles and Kingsland were afraid that Keeler might shoot them or their son. Before leaving the parking lot, Robles stopped the car to take a picture of Keeler and they exchanged words. Robles and Kingsland then got back into their car and drove away, noticing that Keeler continued to watch them with the crossbow. Robles called 911 to report the incident.

Wichita Police Officer Christopher Ruhlen responded to the call, contacting Keeler at the threshold of his apartment. Keeler initially denied having been involved in a

2

dispute that morning but said he had issues with his upstairs neighbor and the neighbor's friends, who Keeler believed were gang members living there without permission. Keeler also described issues he had been having with individuals he believed were stealing from him and threatening his dog.

Keeler eventually acknowledged the incident after being read his *Miranda* rights, painting Robles as the instigating party. Keeler explained that he believed he was being harassed by a man who had been staying in an apartment nearby, describing him as a "dangerous person." Keeler also stated he did not own a gun but believed he was able to defend himself in his apartment. When Officer Ruhlen asked if Keeler owned a crossbow, Keeler initially denied it but then immediately explained that he had an inoperable crossbow with a scope that he used to observe people from inside his apartment.

Keeler then presented the crossbow to Officer Ruhlen, explaining that it did not work. Keeler believed Robles may have known about it because he saw Keeler bring it into the apartment, but Keeler did not know the last time Robles may have seen it. Keeler stated that he used the scope to look around the parking lot at night because people were hanging around and "I don't know who it is and I don't want nobody shooting up my house." Keeler added that the crossbow was "harmless" because it had no trigger but agreed that he should have removed the scope to look around so that nobody thought he was pointing it at them. As for the incident that morning, Keeler admitted he was using the crossbow to look outside from his doorway, but said he did not point it towards Robles and Kingsland because he was "old enough to know better."

The State charged Keeler with two counts of aggravated assault alleging that he "knowingly place[d]" both Robles and Kingsland "in reasonable apprehension of immediate bodily harm, with a deadly weapon, to-wit: crossbow."

3

At trial, the State provided testimony from Robles and Kingsland, as well as the 911 dispatcher and the officer who responded to the call. The State also introduced several exhibits, including: a copy of Robles' 911 call; the officer's bodycam footage of his conversation with Keeler; images of the apartment complex and parking lot; a photograph of Keeler standing in his doorway, which was taken by Robles during the incident; a photograph of the tip of the crossbow bolt seized from Keeler's apartment; and, lastly, the crossbow and the bolt.

The jury convicted Keeler on both counts. After accepting the verdict and finding Keeler guilty, the district court revoked Keeler's bond and asked, "Is this a registration offense?" The prosecutor and defense counsel answered affirmatively, after which Keeler's attorney told the court that Keeler refused to sign the notice of duty to register form. The court said that it was "required" to read the notice to Keeler, explaining that he was required to register due to having been "convicted or adjudicated of an offense requiring registration."

The public facing portion of the presentence investigation (PSI) report reflected that both offenses required registration. The confidential portion of the PSI report also reflected that Keeler was required to register as a violent offender for a term of 15 years because he had been convicted of "a person felony with court finding on the record that such felony was committed with a DEADLY WEAPON - K.S.A. 22-4902(e)(2)."

At sentencing, the court advised Keeler that "as we went over at the time of the jury's verdict, you do have a duty to register." The court filed a journal entry of judgment after the hearing, reflecting the sentences imposed and that Keeler was required to register as a violent offender for a term of 15 years based on having committed "[a]ny conviction of a person felony with court finding on the record that such felony was committed with a DEADLY WEAPON — K.S.A. 22-4902(e)(2)."

4

Keeler timely appeals.

ANALYSIS

*There was sufficient evidence to convict Keeler of aggravated assault.*

Keeler begins by arguing that there was insufficient evidence to support his convictions for aggravated assault with a deadly weapon. While each count involved a different victim—Robles and Kingsland, respectively—Keeler's argument applies to both convictions equally. In short, he contends the jury's finding that he used a deadly weapon lacked evidentiary support because he did not make a contemporaneous threat or intend to communicate a threat of harm towards Robles and Kingsland by using the crossbow. The State counters that Keeler attempted to conceal the crossbow and acknowledged to officers that he should not point it at people, demonstrating that he knew how his conduct would be perceived.

> "When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

To convict an individual of a crime, the State must prove every element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Here, the State charged Keeler with two counts of aggravated assault under K.S.A. 21-5412(b)(1), which meant the State needed to prove that Keeler committed an assault "[w]ith a deadly weapon." Because Keeler only challenges the deadly weapon element, he effectively concedes the State proved, at a minimum, that he committed two counts of simple assault. See K.S.A. 21-5412(a)

5

(defining assault as "knowingly placing another person in reasonable apprehension of immediate bodily harm").

The aggravated assault statute does not define the term "deadly weapon," but as both parties note, the Kansas Supreme Court defines it as "'an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury.'" *State v. Lowe*, 317 Kan. 713, 719, 538 P.3d 1094 (2023) (quoting *State v. Hanks*, 236 Kan. 524, 537, 694 P.2d 407 [1985]). But the court also recognized that "the test for determining whether something is a deadly weapon may present an objective or subjective component, depending on the crime." *Lowe*, 317 Kan. at 719. Contrary to the State's suggestion that a purely objective test is sufficient here, Keeler correctly points out, consistent with *Lowe*, that determining whether an instrument used to commit an assault qualifies as a deadly weapon may involve a subjective test. 317 Kan. at 719-20.

As the court explained in *State v. Deutscher*, 225 Kan. 265, 270-71, 589 P.2d 620 (1979), "an unloaded revolver which is pointed in such a manner as to communicate to the person threatened an apparent ability to fire a shot and thus do bodily harm is a deadly weapon within the meaning expressed by the legislature in the [prior versions of] the assault statutes." Similarly, the Kansas Supreme Court has held that a starter pistol incapable of firing a projectile was nonetheless a "dangerous" weapon to support an aggravated robbery charge, because the defendant in the case "clearly intended the store attendant to believe the gun was operable and dangerous" and "[t]he victim could not determine from viewing the gun that it was a starter pistol with a blocked barrel." *State v. Davis*, 227 Kan. 174, 176-77, 605 P.2d 572 (1980); see also *Deutscher*, 225 Kan. at 269 (finding the terms deadly weapon and dangerous weapon can be used interchangeably).

The district court's jury instructions encompassed these holdings, providing the following definition:

"A deadly weapon is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. An object can be a deadly weapon if the user intended to convince a person that it is a deadly weapon and that person reasonably believed it to be a deadly weapon."

The definition in the instruction also mirrors the language in the standard Pattern Instructions for Kansas (PIK) for aggravated assault. See PIK Crim. 4th 54.280 (2025 Supp.). Keeler further narrows his sufficiency claim to arguing that no evidence showed he intended to convince Robles and Kingsland that he could harm them with the crossbow. Whether Robles and Kingsland reasonably believed the crossbow to be a deadly weapon is not disputed.

Keeler contends the crossbow was not a deadly weapon because he made no contemporaneous threat while holding the crossbow. But the cases he provides do not support the proposition that a contemporaneous threat is *required*, only that an otherwise harmless object *can* be considered a deadly weapon when used in combination with a contemporaneous threat.

For example, in *State v. Graham*, 27 Kan. App. 2d 603, 606, 6 P.3d 928 (2000), the defendant was convicted of aggravated assault in a bench trial based on evidence that he threatened to throw gasoline on a gas station employee. This court upheld the conviction on sufficiency grounds, concluding that the gasoline subjectively qualified as a deadly weapon because the defendant "threatened to use [it] in a manner that communicated an apparent ability to inflict bodily harm." 27 Kan. App. 2d at 607. Likewise, in *State v. Colbert*, 244 Kan. 422, 769 P.2d 1168 (1989), a jury convicted the defendant of aggravated robbery based on evidence that he used an unloaded and defective gun to rob a gas station. Addressing the defendant's jury instruction challenge, the Kansas Supreme Court applied the subjective test and found no clear error because

the evidence showed the defendant "[c]learly . . . intended the victims to believe the gun was a dangerous or deadly weapon." 244 Kan. at 425-26.

Keeler contends that his conduct and the surrounding circumstances do not show that he intended to convince Robles and Kingsland he could harm them with the crossbow. But several facts suggest otherwise. First, Keeler hid the crossbow when Robles took a photograph during the encounter and admitted to the officers that he should have removed the scope so that nobody thought he was pointing a weapon at them. Second, Robles testified that Keeler was known to use binoculars in the past to observe him and his girlfriend, making his use of the crossbow more significant because it showed he could achieve the same purpose in a less hostile manner. Third, Keeler ignores the other statements he made—captured on the officer's body cam video—indicating that he believed he was being harassed by "dangerous" individuals involved in gang activity, that he could defend himself in his apartment, and that he used the scope to observe unknown individuals at night to prevent them from "shooting up my house." Lastly, the police seized a crossbow bolt with a hunting tip from Keeler's apartment.

In sum, while Keeler did not directly communicate a contemporaneous threat to Robles and Kingsland, the jury could reasonably infer from the evidence that he intended to convince them that it was a deadly weapon capable of causing them bodily harm. Keeler's statements to the officers suggest that he knew how his actions would be perceived, particularly that he intended to communicate an apparent ability to deter others from harming him by using a scope attached to a crossbow as an observation device instead of some other tool.

We find that sufficient evidence viewed in the light most favorable to the State supported the jury's finding that Keeler intended to convince Robles and Kingsland that the crossbow was a deadly weapon.

8

*The district court did not clearly err by not providing a lesser included simple assault instruction.*

Keeler next argues the district court erred by not giving the jury a lesser included offense instruction for simple assault. In short, he contends the omission of a simple assault instruction deprived the jury of a viable third option between finding him guilty of aggravated assault with a deadly weapon or finding that he had done nothing wrong. The State disagrees, arguing that the jury would still have convicted him of aggravated assault based on the available evidence, even if they had been provided a simple assault instruction.

Appellate courts apply a multi-step analysis when reviewing jury instruction challenges. First, we determine the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review. Next, we determine whether the instruction was legally appropriate, using an unlimited standard of review. Third, we consider whether the instruction was factually appropriate by considering whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. And finally, if the instruction was both legally and factually appropriate, we conclude whether the error was harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021). We will review each step.

First, as to whether Keeler preserved this issue for review, there is no dispute that Keeler did not object to the absence of a lesser included offense instruction for simple assault.

Second, the parties agree that simple assault is a lesser included offense of aggravated assault, so the instruction would have been legally appropriate. K.S.A. 21-5109(b)(1) (lesser included crime includes "[a] lesser degree of the same crime"); *State v.*

*Nelson*, 224 Kan. 95, 97, 577 P.2d 1178 (1978) ("A simple assault is a lesser included offense of aggravated assault with a deadly weapon.").

Third, the State concedes that a simple assault instruction would have been factually appropriate here.

Accordingly, the question turns to determining whether omitting a simple assault instruction was clear error. K.S.A. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

Appellate courts can reverse for clear error only when "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *State v. Williams*, 295 Kan. 506, 516, 286 P.3d 195 (2012); see *State v. Ford*, 320 Kan. 507, 521-22, 571 P.3d 500 (2025). Keeler bears the burden of demonstrating clear error, which this court assesses based on a de novo review of the entire record. *Lowe*, 317 Kan. at 720-21. Keeler does not meet his burden of showing clear error.

Keeler asserts the jury was asked to make a choice between two options—convicting him of aggravated assault or acquittal—based on the following situation: "an elderly man suffering from paranoia looked through a scope on an unloaded, inoperable crossbow at his neighbors to observe them because he no longer had his binoculars." But the jury was never presented with direct evidence that Keeler had been diagnosed with paranoia or other mental health issues, as the record citations he provides in his brief for those facts correspond with the probable cause affidavit and his attorney's statements at sentencing in support of a departure. There was some evidence that Keeler previously used binoculars to watch his neighbors, but as explained on the previous issue, that fact

10

made his use of the crossbow *more* significant because it elevated the perceived danger by Robles and Kingsland.

Keeler also points out several other facts related to the victims' perceptions of the danger posed by the crossbow, including that they could not tell if the crossbow was loaded and that they got out of their car to confront him. But the jury convicted him of aggravated assault even despite those facts. As discussed above, the evidence was sufficient to find that Keeler intended to convince Robles and Kingsland that his unloaded and inoperable crossbow met the subjective test to qualify as a deadly weapon. Keeler has not persuaded this court the jury would have concluded otherwise and convicted him of simple assault if given a lesser included offense instruction.

*The district court did not err in instructing on the mental state required for the offense.*

Keeler raises another jury instruction challenge, this time arguing the district court erred by instructing the jury that it could convict him of aggravated assault based on a "'knowing'" mental state, rather than an "'intentional'" mental state. In short, he contends the court erroneously instructed the jury because the deadly weapon definition provided by the court required the State to prove that he acted intentionally or "intended to convince" the victims that the crossbow was a deadly weapon.

Analysis of this issue follows the same multi-step process as the previous issue. See *Holley*, 313 Kan. at 253. And again, because Keeler did not object to the challenged instruction below, this court reviews for clear error if instructional error occurred. K.S.A. 22-3414(3).

Unlike the previous issue, the parties disagree about whether Keeler has shown the challenged instruction was legally appropriate. The relevant jury instructions are instruction Nos. 4 and 5, which are identical except for the name of each victim:

11

"Glenn Keeler is charged with aggravated assault. Glenn Keeler pleads not guilty. To establish this charge, each of the following claims must be proved:

"1.     Glenn Keeler knowingly placed Jose M. Robles [and Kadyn N. Kingsland] in reasonable apprehension of immediate bodily harm.

"2.     Glenn Keeler did so with a deadly weapon.

"3.     This act occurred on or about the 14th day of November, 2022, in Sedgwick County, Kansas.

"The State must prove Glenn Keeler acted knowingly. A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about.

"A deadly weapon is an instrument which, from the manner in which it is used, is calculated or likely to produce death or serious bodily injury. And object can be a deadly weapon if the user intended to convince a person that it is a deadly weapon and that person reasonably believed it to be a deadly weapon.

"No bodily contact is necessary."

Keeler recognizes that these instructions were modeled after PIK Crim. 4th 54.280 and PIK Crim. 4th 52.010. The aggravated assault statute also specifically assigns a "knowingly" culpable mental state as an element of the offense. K.S.A. 21-5412(a), (b)(1). Yet he asserts that an instruction defining an *intentional* mental state would have been more appropriate because of the language in the instruction directing the jury to consider whether he "*intended*" to convince Robles and Kingsland that the crossbow was a deadly weapon.

Keeler seems to suggest that aggravated assault under K.S.A. 21-5412(b)(1) is a specific intent crime because it includes an *intentional* mental state, but he provides no authority for that proposition. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761

12

(2020) (failing to support a point with pertinent authority or showing why it is sound in the face of contrary authority is like failing to brief the issue). Contrary to Keeler's point, Kansas law recognizes that aggravated assault is a general intent crime because it includes a *knowingly* culpable mental state element. K.S.A. 21-5202(i); see *State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015) (holding aggravated assault of a law enforcement officer committed with a deadly weapon is a general intent crime). As a result, Keeler does not establish that the instructions setting out the elements of the aggravated assault charges were legally erroneous.

Likewise, Keeler does not discuss whether an instruction defining an *intentional* mental state was factually appropriate. Issues not adequately briefed are considered waived or abandoned. *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021). But given that the statute provides that aggravated assault must be committed "knowingly," an instruction defining a different culpable mental state would not have been factually appropriate as applied to the crimes charged. We find that no instructional error occurred with regards to the culpable mental state element required to convict Keeler of aggravated assault.

But even assuming Keeler is correct that the district court should have supplanted the statutory language by instructing the jury to consider whether he acted intentionally, he does not meet his burden to firmly convince this court that the outcome would have been different. See *Williams*, 295 Kan. at 516. If provided an instruction defining an intentional mental state, the jury would have been tasked with deciding whether it was Keeler's "conscious objective or desire to engage in the conduct or cause the result." K.S.A. 21-5202(h). As applied here, the State would need to prove that he had a conscious objective or desire to convince Robles and Kingsland that his unloaded crossbow was a deadly weapon or cause that result. Whether he knew the crossbow was inoperable is irrelevant because Kansas law requires only an *apparent* ability to cause bodily harm, which is viewed from the perspective of the victim. See *Deutscher*, 225

13

Kan. at 270-71. Again, there was ample evidence for the jury to find that Keeler intended to convince Robles and Kingsland that his unloaded and inoperable crossbow met the subjective test to qualify as a deadly weapon. As a result, Keeler has not persuaded this court the jury would have concluded otherwise and is not entitled to relief on this point. We affirm Keeler's aggravated assault convictions.

*The district court did not err by ordering Keeler to register as a violent offender.*

Lastly, Keeler challenges the district court's order requiring him to register as a violent offender under the Kansas Offender Registration Act (KORA), making two arguments: (1) the district court did not make a proper deadly weapon finding, and (2) the record does not support such a finding because an unloaded and inoperable crossbow is not a deadly weapon for KORA purposes. He asks this court to vacate the registration order.

To begin, Keeler acknowledges that he is challenging the registration order for the first time on appeal but asserts this court can nonetheless address it as legal question arising on undisputed facts and because consideration is necessary to serve the ends of justice. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021) (recognizing preservation exceptions). As both parties note, the Kansas Supreme Court has considered challenges to registration orders made for the first time on appeal. See *State v. Carter*, 311 Kan. 206, 209, 459 P.3d 186 (2020); *State v. Ibarra*, 307 Kan. 431, 432, 411 P.3d 318 (2018).

Even so, the decision to review an unpreserved claim under these recognized exceptions is a prudential one, and this court is not obligated to consider an unpreserved issue for the first time on appeal. *State v. Genson*, 316 Kan. 130, 135, 513 P.3d 1192 (2022) ("[I]f a claim is not effectively raised below, the general rule gives appellate courts the discretion to refuse consideration of that issue."). This court will exercise its

discretion to reach the merits of Keeler's KORA claim under the exceptions asserted in his brief.

Beginning with Keeler's argument that the district court failed to make a proper deadly weapon finding, resolving this issue requires statutory interpretation, which presents a question of law subject to unlimited review. *State v. Marinelli*, 307 Kan. 768, 788, 415 P.3d 405 (2018).

KORA requires certain "offender[s]" to register under the Act. K.S.A. 22-4903(a). A "violent offender" required to register is defined in K.S.A. 22-4902(e). Persons convicted of any of the nine listed crimes under K.S.A. 22-4902(e)(1) are automatically considered violent offenders. But the judge has the discretion to define a defendant as a violent offender for registration purposes if the person has been convicted of any person felony and the judge makes a finding on the record that a deadly weapon was used in the commission of such person felony. K.S.A. 22-4902(e)(2). KORA goes on to provide:

> "(a)(1) At the time of conviction or adjudication for an offense requiring registration as provided in K.S.A. 22-4902, and amendments thereto, the court shall:
> (A) Inform any offender, on the record, of the procedure to register and the requirements of K.S.A. 22-4905, and amendments thereto." K.S.A. 22-4904.

First, Keeler disputes the timing of the district court's deadly weapon finding, asserting that the finding needed to be made "[a]t the time of conviction or adjudication" as required by K.S.A. 22-4904(a)(1). Keeler admits that the district judge told him at the time of his conviction that he would be required to register, that both the prosecutor and defense counsel agreed, and that Keeler refused to sign the registration form. But he asserts that the judge was wrong when he told Keeler that he was required to register due to having been "convicted or adjudicated of an offense requiring registration." He was not convicted of an offense requiring registration. He was only required to register if the

15

judge made the finding that a deadly weapon was used in the commission of a person felony. Having failed to make that finding at the time of conviction, Keeler argues the court's registration order must be vacated. But see K.S.A. 22-4904 (a)(1) (noting that the court must advise the defendant of the duty to register "[a]t the time of conviction or adjudication *for an offense requiring* registration" [Emphasis added.]).

As support, Keeler points to *State v. Juarez*, 312 Kan. 22, 29, 470 P.3d 1271 (2020) (Stegall, J., concurring), in which Justice Stegall explained his view that a district court loses its authority to make the necessary factual findings—thereby preventing the triggering of the registration obligation under KORA—if not made at the time of conviction.

However, Justice Stegall's view has not been adopted by a majority of the court, and Keeler provides no other authority recognizing that the district court must make a specific deadly weapon finding at the time of conviction in order to trigger the duty to register as a violent offender under KORA. Instead, he acknowledges that *Carter* and *Marinelli* may foreclose relief since both cases held that marking the appropriate check box on the *sentencing* journal entry results in an adequate KORA finding. See *Carter*, 311 Kan. at 211; *Marinelli*, 307 Kan. at 789.

Moreover, even if the sentencing journal entry was not sufficient, a plurality of the *Juarez* court held, consistent with *Marinelli*, that there is no consequence under KORA for failing to notify the defendant of the registration requirement at the time of conviction. So the failure to do so does not require that we vacate the registration order.

> "[T]he 'notice' required, within the context of KORA, is the act of informing a defendant of the fact of his duty to register. And as we have previously observed, 'No provision in KORA creates a consequence for the failure to inform a defendant at the appropriate

16

time.' *State v. Marinelli*, 307 Kan. 768, 790, 415 P.3d 405 (2018)." *Juarez*, 312 Kan. at 25.

Again, we are bound to follow Kansas Supreme Court precedent, absent some indication of a departure from its previous precedent. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

Moving then to Keeler's second argument on this issue, this court must determine whether there was substantial competent evidence to support the district court's deadly weapon finding. *Carter*, 311 Kan. at 211. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

As Keeler correctly notes, the *Carter* court held that the definition of "deadly weapon" under KORA is distinct from the competing subjective and objective standards employed when defining that term for the purpose of Kansas criminal statutes. 311 Kan. at 213. Instead, our court adopted a plain language meaning, defining deadly weapon for KORA purposes as "'[a]ny firearm or other device, instrument, material, or substance that, from the manner in which it is used or is intended to be used, is calculated or likely to produce death.' Black's Law Dictionary 1909 (11th ed. 2019)." 311 Kan. at 213. But the court also noted this definition "includes both objective and subjective aspects," reflecting its disapproval of decisions by panels of this court applying either an entirely objective or subjective definition. 311 Kan. at 213. The court then concluded that there was substantial competent evidence to support the district court's deadly weapon finding based on the defendant's brandishing of a Taser during an aggravated robbery of a Dollar General store. 311 Kan. at 215-17.

Keeler argues an unloaded and inoperable crossbow does not qualify as a deadly weapon for KORA purposes because it was incapable of causing death in any

17

circumstance. As support, he relies on *Davis*, in which the Kansas Supreme Court concluded that, under K.S.A. 1978 Supp. 21-4618, now codified at K.S.A. 21-6707, which mandated imprisonment for defendants convicted of certain crimes involving firearms, a starter pistol lacking the capacity to fire a projectile could not be considered a "firearm" for the purpose of denying probation to a defendant convicted of aggravated robbery. 227 Kan. at 177-78. But that case is of little help here because we are not determining whether the crossbow was a firearm or applying that sentencing statute.

Keeler's assertion that the crossbow was not a deadly weapon because it was unloaded and inoperable does not address whether he actively used it to commit the offense of aggravated assault. Stated another way, determining whether an object is a deadly weapon for KORA purposes cannot rely on a solely objective definition of the term. *Carter* explicitly adopted a definition with "both objective and subjective aspects," concluding that merely displaying a Taser after completing a robbery was enough to find that it was "'used'" to commit the offense because it conveyed a threat that facilitated the completion of the crime. 311 Kan. at 213, 216-17. This determination shows that the victim's subjective perception would be a relevant consideration in determining whether the defendant "used" a particular instrument to commit a person felony offense. As in *Carter*, Keeler's use of the crossbow caused Robles and Kingsland to have a subjectively reasonable apprehension of immediate bodily harm, completing the commission of the crime.

As a result, we find there was substantial competent evidence to support the district court's finding that Keeler used a deadly weapon to commit a person felony, triggering his duty to register under K.S.A. 22-4902(e)(2).

Affirmed.

18